**STATE OF WEST VIRGINIA
SUPREME COURT OF APPEALS**

*In re* **N.R., A.R.-1, and A.W.**

**No. 20-1033** (Ohio County 13-CJA-33, 13-CJA-34, and 13-CJA-35)

**MEMORANDUM DECISION**

Petitioners, Mother A.R.-2, by counsel David C. Fuellhart, and Father A.R.-3, by counsel Jeremy B. Cooper, appeal the Circuit Court of Ohio County's November 24, 2020, order denying their motions to transfer the matter to the Dry Creek Rancheria Tribal Court ("Tribal Court").[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel Lee A. Niezgoda, filed a response in support of the circuit court's order. The guardian ad litem, Joseph J. Moses, filed a response on behalf of the children in support of the circuit court's order. On appeal, petitioners argue that the circuit court erred in denying their respective motions to transfer the proceedings to the Tribal Court.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

Many of the pertinent facts of this case are set forth in our prior opinion, *In re N.R.*, 242 W. Va. 581, 836 S.E.2d 799 (2019). Briefly, the circuit court "entered a final dispositional order . . . pursuant to West Virginia Code § 49-4-604(b)(5) (2016), placing the children . . . in the legal and physical custody of the [DHHR] upon finding that the abusing parents were presently unable to adequately care for their children." *Id.* at 584, 836 S.E.2d at 802. Petitioners appealed and argued that the circuit court failed to comply with the Indian Child Welfare Act ("ICWA"), 25 U.S.C. §§ 1901 to 1923, and sought to dismiss the case. *Id.* The DHHR and guardian filed separate appeals,

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W. Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W. Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W. Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W. Va. 641, 398 S.E.2d 123 (1990). Further, because one of the children, the mother, and the father share the same initials, we refer to them as A.R.-1, A.R.-2, and A.R.-3, respectively, throughout this memorandum decision.

arguing that the circuit court erred in failing to terminate petitioners' parental rights. This Court found "no violation of the ICWA" and further found that "the circuit court erred by not terminating the mother's and father's parental rights." *Id.* Accordingly, we reversed the circuit court's order "only insofar as it orders disposition under West Virginia Code § 49-4-604(b)(5)[(2019)]" and remanded "for entry of a final dispositional order terminating the [petitioners'] parental rights pursuant to West Virginia Code § 49-4-604(b)(6)[(2019)]." The above-mentioned opinion was filed on November 7, 2019, and the mandate was issued on January 9, 2020.

On November 13, 2019, petitioners filed motions to transfer the proceedings from the circuit court to the Tribal Court of the Manchester-Point Arenas Band of Pomo Indians (hereinafter "Tribe"), pursuant to 25 U.S.C. § 1911(b). Later in November of 2019, the circuit court denied both motions on the basis that petitioners lacked standing pursuant to this Court's opinion.

On January 27, 2020, the circuit court modified its prior dispositional order and terminated the petitioners' parental rights. Petitioners appealed that order. This Court found that, at the time petitioners filed their motions to transfer, their parental rights remained intact as the circuit court had not yet entered an order terminating their parental rights. As parents with their parental rights intact to the children at issue, petitioners had standing to bring a motion to transfer the proceedings to the Tribal Court. Accordingly, this Court vacated the circuit court's order denying petitioners' motions to transfer and remanded the matter with instructions to address the motions on the merits. *See In re N.R.*, No. 20-0202, 2020 WL 5889363 (W. Va. Oct. 2, 2020)(memorandum decision).

Subsequently, the Tribe joined petitioners' motions to transfer and, on November 9, 2020, the Tribal Court entered an order accepting jurisdiction of this matter. Later in November of 2020, the circuit court held a hearing on the motion to transfer. After hearing arguments and considering the applicable law, the circuit court denied petitioners' motion to transfer. The circuit court found that petitioners filed the motion in response to this Court's opinion ordering that their parental rights be terminated, as the motion was filed just six days after that opinion issued. The circuit court also found that the father and Elizabeth DeRouen, the Executive Director of Indian Child and Family Preservation of the Tribe, had discussed filing a motion to transfer as early as 2014, but had declined to do so.[2] Indeed, until the motion to transfer was filed in November of 2019, the mother had objected to having this matter transferred to the Tribal Court, and the Tribe refrained from filing a motion to transfer due to her objection. The circuit court found that, although neither parent now objected and the Tribal Court had not declined jurisdiction, good cause existed to deny the motion to transfer based on the advanced stage of the proceedings and undue hardship due to the distance between the Tribal Court and the parties, witnesses, and evidence in the matter. The circuit court specifically noted that the Tribal Court was over 2,000 miles from West Virginia, which would render travel costly and difficult. Further, the DHHR caseworkers, the DHHR's counsel, the guardian, the grandparents and their counsel, the foster families, the children, the children's therapists and service providers, and all other witnesses and records pertaining to the matter were located in West Virginia. Given the large amount of persons involved, the number of witnesses to be called, and the voluminous exhibits generated over the years the matter had been proceeding, the circuit court felt that it would be "virtually impossible" to hold any hearings via videoconferencing. The circuit court found that the matter had been ongoing for over five years

---

[2]The father and Ms. DeRouen are first cousins.

2

and at no time prior to November 13, 2019, did either petitioner file a motion seeking to have the matter transferred. As such, the circuit court opined that the motions were "a last-ditch attempt to salvage their parental rights" and denied the same. Petitioners appeal the November 24, 2020, order denying their motions to transfer.[3]

The Court has previously held:

> "Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W. Va. 89, 717 S.E.2d 873 (2011).

On appeal, petitioners argue that the circuit court erred in denying their motions to transfer the proceedings to the Tribal Court. Petitioners deny that their motions to transfer were a "last-ditch attempt to salvage their parental rights." Petitioners claim that this theory was erroneous as they had exhausted all avenues of avoiding the termination of their parental rights by the time the circuit court ruled on their motions. As such, "there was no longer a way to forestall the termination of their parental rights" and, in any event, "this Court's ruling regarding the question of parental rights was binding on the Circuit Court, and would have been binding on the Tribal Court."

At the outset, we note that petitioners filed their motions to transfer nearly immediately after this Court issued its opinion ordering the termination of their parental rights. In considering these proceedings as a whole, reviewing the motions to transfer, and hearing the testimony and arguments made at the hearing on petitioners' motions, the circuit court determined that petitioners were attempting to evade the certain termination of their parental rights in filing the motions. To this extent, we find no error as the circuit court was free to make a credibility determination in weighing that evidence. *See Michael D.C. v. Wanda L.C.*, 201 W. Va. 381, 388, 497 S.E.2d 531, 538 (1997) ("A reviewing court cannot assess witness credibility through a record. The trier of fact is uniquely situated to make such determinations and this Court is not in a position to, and will not, second guess such determinations."). Indeed, given the nearly eight-year history of this case, it is evident to this Court that petitioners were attempting a "last-ditch" effort to retain their parental rights. Petitioners' arguments to the contrary are unsupported by anything other than their self-

---

[3]The parents' parental rights were terminated below. According to the parties, the permanency plan for the children is adoption in their respective non-relative foster placements.

3

serving statements in support of this matter. In fact, a review of petitioners' motion to transfer reveals that they provided no qualifying statements as to why they were requesting the transfer. Petitioners likewise fail to cite to any authority demonstrating how they are in a position to argue for any particular placement for their children as their parental rights have been terminated.[4]

In fact, were we to accept petitioners' claims that they were merely seeking transfer of the matter to the Tribal Court for the purposes of permanent placement, it is clear that the circuit court did not err in denying the motion. As noted by the circuit court, the Arizona Supreme Court found that 25 U.S.C. § 1911(b), which governs the transfer of proceedings to a tribal court, does not apply to proceedings regarding preadoptive or adoptive placements. *See Gila River Indian Cmty. v. Dep't of Child Safety*, 242 Ariz. 277, 281, 395 P.3d 286, 290 (2017). Section 1911(b) of the ICWA permits the parents of Indian children to petition state courts to transfer certain proceedings to the children's respective tribal courts:

> In any State court proceeding for the *foster care placement of, or termination of parental rights to*, an Indian child not domiciled or residing within the reservation of the Indian child's tribe, the court, in the absence of good cause to the contrary, shall transfer such proceeding to the jurisdiction of the tribe, absent objection by either parent, upon the petition of either parent or the Indian custodian or the Indian child's tribe: *Provided*, That such transfer shall be subject to declination by the tribal court of such tribe.

(Emphasis added). As noted by the court in *Gila River*, § 1911(b), by its own terms, governs only 1) foster care placement and 2) termination of parental rights actions. *Gila River*, 242 Ariz. at 281, 395 P.3d at 290. The ICWA defines "foster care placement" as

> any action removing an Indian child from its parent or Indian custodian for temporary placement in a foster home or institution or the home of a guardian or conservator where the parent or Indian custodian cannot have the child returned upon demand, *but where parental rights have not been terminated. . . .*

25 U.S.C. § 1903(1)(i) (emphasis added). The *Gila River* Court concluded that the Gila River Indian Community's motion to transfer the matter to a tribal court was not governed by 25 U.S.C. § 1911(b) as the parents' parental rights had already been terminated. We concur with this reasoning and find it applicable to the case at bar.

---

[4]While this Court acknowledges that it previously remanded the matter for a hearing of petitioners' motion to transfer on the merits, we did not assess the substance of their claims. We simply ordered the circuit court to hold a hearing given that petitioners did, in fact, have standing to file the motion, which was contrary to the circuit court's prior findings. However, petitioners, who admit that this Court's opinion directing their parental rights to be terminated was binding on the circuit court, failed to demonstrate that they were appropriate persons to address permanent placement of the children under the ICWA, as described more fully above. Moreover, the Tribe, who is in a better position to address permanent placement of the children than petitioners and was a party to the underlying matter, heard the circuit court's ruling on the motions to transfer and permanent placement, yet failed to file any appeal with this Court on either of those matters.

4

When petitioners filed the motion to transfer, this Court had already entered a decision instructing the circuit court to terminate petitioners' parental rights. While we question petitioners' claims that they were not attempting to transfer the matter in order to avoid the termination of their parental rights, they now claim that they were attempting to have the matter transferred for preadoptive or adoptive placement. By their own admission, petitioners argue that this Court's order to terminate their parental rights was binding and the sole remaining issue was the adoptive placement of the children. Section 1911(b) simply does not govern motions to transfer on the basis of preadoptive or adoptive placements. Accordingly, we find that petitioners are not entitled to relief in this regard.[5]

For the foregoing reasons, we find no error in the decision of the circuit court, and its November 24, 2020, order is hereby affirmed.

Affirmed.

**ISSUED**:  June 3, 2021

**CONCURRED IN BY**:

Chief Justice Evan H. Jenkins
Justice Elizabeth D. Walker
Justice Tim Armstead
Justice John A. Hutchison
Justice William R. Wooton

---

[5]On appeal, petitioners also contest the circuit court's findings that good cause existed to deny the motion to transfer on the basis of the advanced stage of the proceedings and that undue hardship would occur if the proceedings were transferred to the Tribal Court. However, because we find that § 1911(b) does not govern motions to transfer on the basis of preadoptive or adoptive placements, it is unnecessary to address petitioner's arguments concerning the lower court's ruling regarding the advanced stage of the proceedings and undue hardship.